IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Vanessa Wimberly Curry, | ) | C/A No. 3:09-2718-JFA-PJG |
|                 Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| BlueCross BlueShield of South Carolina, | ) | |
|                 Defendant. | ) | |

Vanessa Wimberly Curry ("Curry"), filed this employment discrimination action against her former employer, BlueCross BlueShield of South Carolina ("BlueCross").[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on BlueCross's motion to dismiss or, in the alternative, for summary judgment.[2] (ECF No. 32.) Also pending before the court is Curry's motion for summary judgment. (ECF No. 31.)

Curry is self-represented; consequently, the court issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Curry of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the defendant's

---

[1] Although Curry does not indicate her theory of recovery in her Complaint, she clarifies in her filings related to the pending motions that she is proceeding pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). To the extent Curry attempts to assert any other causes of action, the court finds that, even liberally construed, Curry's allegations fail to state a plausible claim for relief under the applicable pleading standard enunciated in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

[2] Both parties have presented matters outside the pleadings and the court is considering BlueCross's motion under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(d) (addressing conversion of Rule 12 motions).

motion. Curry filed a response in opposition (ECF No. 37) and BlueCross filed a reply (ECF No. 39). Additionally, BlueCross filed a response to Curry's motion for summary judgment (ECF No. 35) and Curry filed a reply (ECF No. 42).[3] Having carefully considered the parties' submissions and the record in this case, the court finds that the defendant's motion for summary judgment should be granted and Curry's motion denied.

## BACKGROUND

Curry, who is African-American, formerly worked as a Flexible Spending Account ("FSA") Specialist or Coordinator and telecommuted from her home in Columbia, South Carolina, where BlueCross's corporate offices are located. Curry reported to Angie Cason,[4] an FSA Supervisor, who in turn was supervised by Sandra Watson, FSA Manager. Watson is African-American. The FSA department was under the management of Stephen Richardson, a Senior Director who also managed the COBRA[5] department. Richardson is apparently not African-American.

In July 2007, Curry planned to move to Macon, Georgia, which is at least a three-hour drive from Columbia. She informed Cason and sought approval to continue to telecommute from Macon rather than Columbia. Cason relayed the request to Watson, who, in conjunction with Richardson, denied it. Upon learning that her request had been denied, Curry quit. Curry now asserts claims of discriminatory treatment and retaliation based upon Watson's and Richardson's denial of her request to telecommute from Macon, Georgia when white employees were permitted to work from their homes in North Carolina and Tennessee.

---

[3] The court observes that Curry's reply was untimely filed.

[4] The record contains references to both Angie Cason and Angie Cason-Young.

[5] COBRA refers to the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 82.

## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B. Burden Shifting**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's

affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 301 F.3d at 294-95.

**C. Curry's Claims**

**1. Disparate Treatment**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . [her] race." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of disparate treatment regarding compensation or employment benefits, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation or benefits; and (4) that similarly situated employees outside the protected class received more favorable treatment. White v. BFI Waste Services, LLC, 375 F.3d 288, 295 (4th Cir. 2004); see also

Gregory v. Daly, 243 F.3d 687, 695 (2d Cir. 2001) (holding that a plaintiff may make out a *prima facie* case of discrimination with respect to tangible employment actions by alleging (1) her membership in a protected class, (2) her qualification for the job benefit at issue, (3) that she was subjected to adverse employment actions, and (4) that these actions were taken under circumstances giving rise to an inference of discrimination). On the record presented, Curry cannot establish at least two of the requisite elements,[6] since she cannot show that she suffered an adverse employment action or that similarly situated employees were treated more favorably.

In a disparate treatment case, an adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). It must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998).

Here, Curry experienced no significant change in her employment status as a result of the decision to deny her permission to telecommute from Macon, as she could have continued to work from home in Columbia. Under the applicable standard, the court cannot say that BlueCross's refusal of her request to telecommute from a more distant location caused a significant change in Curry's benefits, since she could have continued to work for BlueCross under the same terms she enjoyed prior to her request. See Brockman v. Snow, 217 Fed. Appx. 201, 205-06 (4th Cir. Feb. 13,

---

[6] BlueCross concedes that Curry meets the first element. The second element, requiring that Curry show satisfactory job performance, is hotly disputed. Even if a genuine issue of material fact existed as to Curry's performance, however, her failure to satisfy all of the required elements of the *prima facie* case mandates judgment as a matter of law for BlueCross.

2007) (unpublished) (finding no adverse employment action in a disparate treatment case where the plaintiff was denied her request to work from home, stating that "[a] determination affecting [the plaintiff's] ability to work where she chooses is not the type of ultimate decision that this court has required for a prima facie case of discrimination").

Even assuming Curry could establish the first three elements of the *prima facie* case, she cannot demonstrate that similarly situated individuals outside the class were treated more favorably. To establish a case of disparate treatment based upon comparison of a plaintiff's treatment to that of non-minority employees, the plaintiff must show that the comparators are similarly situated in all relevant respects. See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992); Haywood v. Locke, No. 09-1604, 2010 WL 2711294, *3 (4th Cir. July 6, 2010) (unpublished) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"). To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor and been subject to the same standards, and there must be no distinguishing or mitigating circumstances. See Mitchell, 964 F.2d at 583 (discussing the meaning of "similarly situated" in the context of a disparate discipline case); Duggan v. Sisters of Charity Providence Hosp., 663 F. Supp. 2d 456 (D.S.C. 2009) (same); see also Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000) (stating that "the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances"); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994) (stating that in disparate treatment cases, employees must be similar in all relevant aspects, such as in performance, qualifications, and conduct). Here, Curry contends that two white employees—Christy Sims and Amy Scott-Ghent—were permitted to work from their residences

outside of Columbia, South Carolina.[7] Sims telecommuted from Charlotte, North Carolina—less than two hours away from Columbia—and Scott-Ghent worked from her home in Tennessee, over three hours away. These two employees are not valid comparators, however. First, Scott-Ghent was not employed in the FSA department. Although Scott-Ghent did work in the COBRA department which was also under Richardson's supervision, BlueCross has submitted abundant evidence that the FSA department, unlike the COBRA department, was undergoing significant problems resulting in restructuring and system changes that required the FSA coordinators to be more frequently on site for training and meetings. Curry, although taking issue with BlueCross's characterization of how often the FSA coordinators' presence on site was required during this restructuring period, has not presented any probative evidence refuting this. Moreover, the decisions to allow Sims and Scott-Ghent to work from their homes outside South Carolina were not made by Watson or Richardson, the undisputed decision makers in Curry's case. In fact, after Curry left BlueCross, the company implemented a policy restricting telecommuters to a two-hour distance from the home office, which resulted in Scott-Ghent's resignation. Based on the record presented, Curry cannot show that Sims and Scott-Ghent are similarly situated employees outside the protected class who were treated more favorably.

Even if Curry could establish all of the required elements for a *prima facie* case, she cannot show that the legitimate, nondiscriminatory reason proffered by BlueCross for the denial of her

---

[7] To the extent that Curry utilizes as comparators Marcy Watts, Nicole Walker, Yvonne Pinelli, and Stephanie Stahl in support of her allegations of discrimination, Curry has failed to demonstrate that they are similarly situated to her. Watts and Walker worked for different teams or units and reported to different management. (Watson Reply Aff. ¶ 9, ECF No. 39-1 at 2.) While Pinelli and Stahl were FSA associates, they were working from home in Columbia at the time Curry resigned as opposed to several hours away. (Richardson Reply Aff., ECF No. 40-1; Pl.'s Mem. Opp'n Mot. Dismiss and/or Summ. J. at 12, ECF No. 37 at 12.) Accordingly, these individuals are also not valid comparators.

request to telecommute from Georgia was a pretext for discrimination. Although she attacks the affidavits of Watson and Richardson as untrue in several respects, she offers no probative evidence to counter them. For example, although she asserts that Scott-Ghent was "transferred" to Tennessee, the document she references does not support Curry's characterization. (Pl.'s Reply to Def.'s Mem. Opp'n Summ. J. at 12, ECF No. 42 at 2; ECF No. 42-1 at 1.) Moreover, she challenges as untrue Watson's averment that no FSA employee has been permitted to begin working from home since Curry's resignation; however, she presents no evidence to the contrary, as the comparators she relies upon were employed in other areas. (Pl.'s Mem. Opp'n Mot. Dismiss and/or Summ. J., ECF No. 37 at 11.) Further, nothing in the record suggests that BlueCross's proffered reason for denying Curry's request—that Macon was too far away for a telecommuter whose department was undergoing restructuring and systems changes—is unworthy of credence.

### 2. Retaliation

Title VII's anti-retaliation section provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Curry must show: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998) (Title VII); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA and Title VII). "Protected activity" under the statute falls into one of two categories: opposition or participation. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 129 S. Ct. 846, 850 (2009); Laughlin, 149 F.3d at 257. "Oppose"

means "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." Crawford, 129 S. Ct. at 850 (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). An employee need not instigate or initiate a complaint to be covered by the opposition clause. Id. at 851; see also Laughlin, 149 F.3d at 259 ("To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim."). To establish that she engaged in protected opposition activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring. See Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003). Participation, which receives broader protection than opposition conduct, includes: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing" under federal employment discrimination laws. See Laughlin, 149 F.3d at 259.

Here, Curry has not alleged that she engaged in any activity that is protected under federal employment discrimination statutes. Rather, she asserts that she was denied permission to telecommute from Macon as retaliation for "non-conforming." (Compl., ECF No. 1 at 4.) Specifically, Curry opines that Watson retaliated against her (1) because she made an anonymous hotline complaint about a co-worker's workload, which Curry believes resulted in the termination of a friend of Watson's; (2) for suggesting improvements to Watson and another manager; and (3) for complaining to Human Resources about being denied a team leader position based on "unfair departmental practices." Of these allegations, the only one remotely within the statute's protection is the third. However, to establish that she engaged in protected activity, a plaintiff must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring or participated in activity protected under the statute. See, e.g., Peters, 327 F.3d at 320. Curry has made no showing, or even any allegation, that the "unfair departmental practice" of which

she complained was related in any way to employment discrimination that is prohibited under federal law. Thus, Curry has not shown that she engaged in protected activity and, even if she had, she has presented no evidence that the denial of her request to telecommute from Macon[8] was linked to the conduct described above.

Finally, even if Curry could establish a *prima facie* case of retaliation, for the reasons discussed above she cannot show that BlueCross's proffered reason for denying her request was a pretext for retaliation.

## RECOMMENDATION

Curry has not presented sufficient evidence to establish a *prima facie* case of disparate treatment or retaliation. Even if she had, she has failed to present sufficient evidence from which a reasonable jury could find that BlueCross's proffered reason was a pretext for unlawful discrimination or retaliation. Accordingly, the court recommends that BlueCross's motion for summary judgment (ECF No. 32) be granted and that Curry's motion for summary judgment (ECF No. 31) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 14, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[8] The court assumes without deciding that the denial of Curry's request was sufficiently adverse under the relevant standard for a retaliation claim as opposed to her disparate treatment claim. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 67-68 (2006); see also Brockman v. Snow, 217 Fed. Appx. 201, 205-07 (4th Cir. Feb. 13, 2007) (unpublished) (finding the denial of the plaintiff's request to work from home was not an adverse employment action in her disparate treatment claim, but assuming without deciding that it was an adverse employment action in her retaliation claim).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).